RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 24a0017p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

CHINYERE OGBONNA-MCGRUDER,

*Plaintiff-Appellant*,

*v.*

No. 23-5557

AUSTIN PEAY STATE UNIVERSITY; TUCKER BROWN and
MARSHA LYLE-GONGA, in their individual capacities,

*Defendants-Appellees*.

───────────────

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:21-cv-00506—Eli J. Richardson, District Judge.

Decided and Filed:  January 30, 2024

Before:  GRIFFIN, BUSH, and READLER, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  James W. Edwards, CORLEY HENARD LYLE LEVY & LANGFORD, PLC, Hendersonville, Tennessee, for Appellant.  Toni-Ann M. Dolan, Valerie M. Stoneback, E. Ashley Carter, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellees.

───────────────

## OPINION

───────────────

JOHN K. BUSH, Circuit Judge.  Chinyere Ogbonna-McGruder sued her employer, Austin Peay State University (APSU), and two of her supervisors, alleging that they engaged in racial discrimination, created a hostile work environment, and retaliated against her when she opposed their unlawful conduct.  She also claimed that her supervisors violated her constitutional

rights under 42 U.S.C. § 1983. The district court granted defendants' motions to dismiss all counts for failure to state a claim. For reasons that follow, we AFFIRM.

## I.

Because this appeal arises from a motion to dismiss, we draw the facts from the allegations in the operative pleading, the First Amended Complaint. In 2003, APSU hired plaintiff Ogbonna-McGruder, who is African American, to teach classes in criminal justice and public management. Her problems with the university began in 2017, when it underwent a series of organizational changes. In the spring of that year, she learned that the public management and criminal justice department would be split: the criminal justice side would operate independently as a single department, and the public management side would merge with the political science department. Following the switch, she could either (1) select a single department to join, which did not require faculty approval; or (2) seek a joint appointment to both departments, which required faculty review of her qualifications.

Ogbonna-McGruder claims that she was unlawfully denied the opportunity to select her department after then-Dean David Denton rejected her request for joint appointment. She filed a complaint with APSU's Office of Equal Opportunity and Affirmative Action, alleging that Denton engaged in racial discrimination when he denied her request. According to Ogbonna-McGruder, APSU's internal investigation found that Denton's actions "were wrong," but the university took no action. First Amended Complaint (FAC), R. 53, PageID 455. Having found no remedy with the university, she filed a complaint with the Equal Employment Opportunity Commission (EEOC) in September 2019.

She claims that from summer 2019 through summer 2022, defendants "perpetuate[d] a hostile work environment" based on her race and in response to her filing the 2019 EEOC charge. *Id.*, PageID 456. She alleges that the following incidents contributed to a hostile work environment:

- In September 2019, defendant Dr. Tucker Brown, Dean of the College of Behavioral and Health Sciences, instructed her "to move from [her] office to a basement office." *Id.*

- In October 2019, she was denied the opportunity to draft a grant proposal for a juvenile detention center in Tennessee. Brown had previously "assured [her] in writing" that she could participate, and a County Commissioner specifically requested that she join the drafting process. *Id.*, PageID 456–57.

- On October 9, 2019, Brown yelled at her in front of a white faculty member.

- In March 2020, defendant Dr. Marsha Lyle-Gonga, Chair of the Department of Political Science and Public Management, refused to complete Ogbonna-McGruder's faculty evaluation for the 2019–2020 academic year. She appealed the failure to receive an evaluation, and Brown scheduled a Zoom call to address the issue. During the call, Brown "denigrated [her] teaching and research done with minority students" and "indicated that [her] teaching pedagogy was questionable," ignoring the high ratings she had received from her students. *Id.*, PageID 457–59.

- She received a 4.45 out of 6.0 in her evaluation for the 2020–2021 academic year, but Lyle-Gonga lowered the evaluation score to 4.25. Lyle-Gonga reinstated the original score after Ogbonna-McGruder complained. Additionally, she received a low evaluation for the 2021–2022 year after Lyle-Gonga "purposefully misrepresented the criteria used" for evaluations. *Id.*, PageID 462.

- Professors in the Department of Political Science and Public Management voted in favor of her proposal to create a master's program in January 2020, but Brown and Lyle-Gonga "deliberately refused to confer with [her] about [the] matter." *Id.*, PageID 458.

- In spring 2020, she received word that a white adjunct professor was replacing her to teach a class during the fall 2020 semester. Although she repeatedly asked Lyle-Gonga and Brown for a replacement class, Brown did not notify her of a replacement until summer 2020.

- Lyle-Gonga denied Ogbonna-McGruder's request to teach political science classes in 2021 and 2022 and assigned her to teach public management courses instead. Lyle-Gonga reasoned that Ogbonna-McGruder "was not qualified to teach political science classes due to not having a political science or law degree," although she had taught political science courses at APSU for 18 years. *Id.*, PageID 460–62.

- She was denied the opportunity to teach summer semester classes in 2019 and 2021.

- Her work was omitted from APSU's College of Behavioral & Health Sciences' year-end report of presentations and research completed by faculty members.

In September 2020, Ogbonna-McGruder filed her second EEOC complaint, asserting that APSU, Brown, and Lyle-Gonga discriminated against her because of her race. Her third EEOC complaint followed on June 17, 2021, alleging that APSU retaliated in response to her prior EEOC claims. Soon after she received right-to-sue letters for her second and third EEOC

complaints, she filed this action under Title VII of the Civil Rights Act of 1964. She thereafter amended her Complaint.

The First Amended Complaint does not specify which claims are brought under Title VII. But the district court discerned (and Ogbonna-McGruder does not dispute) that she alleges the following claims against the university under Title VII: that it (1) created a hostile work environment based on her race; (2) discriminated against her on the basis of her race; (3) unlawfully retaliated against her for opposing APSU's discriminatory practices; and (4) created a hostile work environment in retaliation for her opposing the discrimination. She also asserts claims against Brown and Lyle-Gonga in their individual capacities under 42 U.S.C. § 1983, alleging that they "engaged in conspiratorial behavior that has caused [her] to be deprived of rights to which she is entitled under laws of the United States, including but not limited to retaliation for having reported the violations of her rights." *Id.*, PageID 463.

The district court granted Brown and Lyle-Gonga's motion to dismiss, explaining that Ogbonna-McGruder did not properly plead any claim under § 1983 because she made "absolutely no reference to any constitutional violation, or for that matter any violation of federal law other than Title VII." Order Granting Individual Defs.' Mot. to Dismiss, R. 84, PageID 875–90. The district court later granted APSU's motion to dismiss all remaining claims under Federal Rule of Civil Procedure 12(b)(6). Ogbonna-McGruder timely appealed.

**II.**

We review the district court's dismissal of the First Amended Complaint de novo. *West v. Ky. Horse Racing Comm'n*, 972 F.3d 881, 886 (6th Cir. 2020). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether a plaintiff has stated a plausible claim for relief, the court must accept any factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Fisher v. Perron*, 30 F.4th 289, 294 (6th Cir. 2022). However, "the presumption of truth is inapplicable to legal conclusions." *Id.*

**III.**

**A.          Race-Based Hostile Work Environment Claim**

Ogbonna-McGruder appeals the district court's dismissal of her claim that APSU created a hostile work environment on account of her race. Notably, at the motion-to-dismiss stage, a plaintiff is not required to plead facts establishing a prima facie case as is required under *McDonnell Douglas v. Green*, 411 U.S. 792 (1973). *See Keys v. Humana, Inc.*, 684 F.3d 605, 608–09 (6th Cir. 2012) (explaining that "application of the *McDonnell Douglas* prima facie case at the pleading stage 'was contrary to the Federal Rules' structure of liberal pleading requirements'" (quoting *Twombly*, 550 U.S. at 570)). Instead, a plaintiff asserting a hostile work environment claim must allege that her "workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002) (cleaned up). Additionally, the plaintiff must allege that she is a member of a protected class and that "the harassment was based on race." *Phillips v. UAW Int'l*, 854 F.3d 323, 327 (6th Cir. 2017).

Here, the district court dismissed Ogbonna-McGruder's race-based hostile work environment claim because she did not allege that any harassment she experienced was "specifically due to [her] race." Dist. Ct. Op., R. 100, PageID 1278. Additionally, the district court found that any alleged harassment was not sufficiently severe or pervasive to constitute a hostile work environment. *Id.* at 1278–84. Regardless of whether Ogbonna-McGruder alleged discriminatory animus, the district court did not err in dismissing her race-based hostile work environment claim because she did not allege severe or pervasive harassment.

First, the district court correctly found that the allegations of discrete acts of discrimination could not be characterized as part of the hostile work environment claim. The Supreme Court has explained that under Title VII, a plaintiff may bring a claim alleging that either (1) an employer engaged in "discrete discriminatory acts" such as "termination, failure to promote, denial of transfer, or refusal to hire"; or (2) the employer's "repeated conduct" created a hostile work environment. *Morgan*, 536 U.S. at 114–15; *Hunter v. Sec'y of U.S. Army*,

565 F.3d 986, 993–94 (6th Cir. 2009). Because the two claims are "different in kind," we have consistently held that allegations of discrete acts may be alleged as separate claims, and as such "cannot properly be characterized as part of a continuing hostile work environment." *Sasse v. U.S. Dep't of Labor*, 409 F.3d 773, 783 (6th Cir. 2005); *see Morgan*, 536 U.S. at 115; *Taylor v. Donahoe*, 452 F. App'x 614, 620 (6th Cir. 2011) ("First, the alleged wrongs identified by plaintiff represent discrete acts of alleged retaliation (or discrimination) rather than acts contributing to a hostile work environment."); *Jones v. City of Franklin*, 309 F. App'x 938, 942–44 (6th Cir. 2009) (distinguishing allegations supporting a hostile work environment claim from allegations of discrete acts of discrimination); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 708 (6th Cir. 2007) (holding that employer's refusal to remove the plaintiff from an unfavorable post was "more akin to a discrete act, which is decidedly not actionable as a hostile-work-environment claim").

We agree with the district court that most of Ogbonna-McGruder's allegations do not constitute "harassment" contributing to the hostile work environment claim. Her allegations that she was denied the opportunity to draft a grant proposal and teach summer courses, received low evaluations, was replaced by a white adjunct professor, and was reassigned to teach public management courses represent discrete acts that could perhaps support separate claims of discrimination or retaliation under Title VII. *See Hunter*, 565 F.3d at 994 (holding that "failure to promote an employee or select him for a training program is a discrete act"); *Jones*, 309 F. App'x at 942 (finding that allegations of "lowered evaluation scores, disciplinary actions, and the lack of promotions" were "discrete acts of racial discrimination"); *Cecil v. Louisville Water Co.*, 301 F. App'x 490, 496 (6th Cir. 2008) (claims that employer denied plaintiff training, gave her "unattainable and undesirable work assignments" and "outsource[ed] her job responsibilities" were discrete acts).

By contrast, only four incidents in the First Amended Complaint could constitute harassment to support Ogbonna-McGruder's hostile work environment claim: that (1) Brown instructed her to move to the basement; (2) Brown scolded her in front of a white faculty member; (3) Brown denigrated her teaching abilities during a video call; and (4) Lyle-Gonga stated that she was not qualified to teach political science courses.

But even viewing those allegations as a whole, Ogbonna-McGruder did not sufficiently allege facts from which we may infer that the harassment she experienced was severe or pervasive. Courts consider the totality of circumstances in determining the severity and pervasiveness of alleged harassment, including "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993). Notably, the alleged harassment must be both objectively and subjectively severe and pervasive to be actionable. *Id.* at 21–22. Allegations of "simple teasing, . . . offhand comments, and isolated incidents (unless extremely serious)" do not suffice. *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks omitted).

The district court did not err in concluding that the four alleged incidents fail to establish severe or pervasive harassment. As an initial matter, those events occurred over a period of approximately two and a half years—that is too infrequent to demonstrate that her workplace was "permeated with" ridicule and insult. *See Phillips*, 854 F.3d at 327–28 (holding that four racially offensive statements made over a two-year period were too isolated to constitute severe and pervasive harassment); *Clark*, 400 F.3d at 351–52 (concluding that three incidents over two and a half years was not severe or pervasive). And defendants' comments about her teaching abilities and qualifications, while undoubtedly offensive, are not sufficiently serious to constitute severe harassment. *Faragher*, 524 U.S. at 788 (noting that "the ordinary tribulations of the workplace, such as the sporadic use of abusive language" does not amount to hostility under Title VII (internal quotations marks and citation omitted)). Moreover, she did not allege that the harassment was physically threatening. Her conclusory assertions that defendants' actions "unreasonably interfered with [her] work performance," without alleging supporting factual allegations, is insufficient for purposes of a motion to dismiss. FAC, R. 53, PageID 464. Because she failed to plausibly allege severe or pervasive harassment, the district court did not err in dismissing her race-based hostile work environment claim.

**B.    Retaliatory Hostile Work Environment Claim**

We affirm the district court's dismissal of the retaliatory hostile work environment claim on similar grounds. A plaintiff asserting such a claim must allege that she "was subjected to

severe or pervasive retaliatory harassment by a supervisor" after she engaged in activity protected by Title VII, and that "there was a causal connection between the protected activity and the . . . harassment." *Morris v. Oldham Cnty. Fiscal Ct.*, 201 F.3d 784, 792 (6th Cir. 2000) (emphasis omitted). The district court dismissed Ogbonna-McGruder's claim because she did not plausibly allege that she was subjected to severe or pervasive discrimination in retaliation for her complaints about APSU's discriminatory conduct, or that her harassment was causally connected to any protected activity.

Her objection to the district court's holding is twofold. First, she claims that the district court should have recognized, "based on its judicial experience and common sense," that the harassment she experienced was causally related to her filing her 2019 Complaint with the EEOC. Appellant Br. at 30. But even if she had alleged a causal connection, her claim nonetheless fails because she did not plausibly allege that the harassment she suffered was severe or pervasive, as explained above.

Ogbonna-McGruder next contends that she was not required to allege that the harassment was severe or pervasive for purposes of her retaliatory hostile work environment claim. In support, she relies on *Tonkyro v. Sec'y, Dep't of Veterans Affs.*, in which the Eleventh Circuit held that a plaintiff alleging a retaliatory hostile work environment claim was only required to prove that her employer's conduct would cause a reasonable worker to be dissuaded from filing or supporting a complaint of racial discrimination—rather than the familiar "severe or pervasive" standard. 995 F.3d 828, 836 (11th Cir. 2021). She also cites *Burlington N. & Santa Fe Ry. Co. v. White*, in which the Supreme Court applied a similarly lowered standard to a general retaliation claim. 548 U.S. 53, 68 (2006). However, neither decision controls our analysis here: *Tonkyro*, an out-of-circuit decision, does not bind this court; and *Burlington* does not apply in the context of a retaliatory hostile work environment claim. *See id.* at 64–65 (explaining that other cases were inapposite because they dealt with hostile work environment claims as opposed to a retaliation claim). And our circuit has repeatedly held that a retaliatory hostile work environment claim must include evidence that the harassment was severe or pervasive. *See, e.g.*, *Wyatt v. Nissan N. Am., Inc.*, 999 F.3d 400, 419 (6th Cir. 2021); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 595 (6th Cir. 2007); *Morris*, 201 F.3d at 792; *Middleton v. United*

*Church of Christ Bd.*, No. 20-4141, 2021 WL 5447040, at \*5 (6th Cir. Nov. 22, 2021) (citing *Harris*, 510 U.S. at 21); *Mulvey v. Hugler*, No. 17-5633, 2018 WL 2771346, at \*5 (6th Cir. Apr. 3, 2018); *Cleveland v. S. Disposal Waste Connections*, 491 F. App'x 698, 707 (6th Cir. 2012). Accordingly, we affirm the district court's dismissal of the retaliatory hostile work environment claim.

## C.     Discrimination Claim

Ogbonna-McGruder next challenges the district court's dismissal of her discrimination claim. Title VII prohibits employers from "discriminat[ing] against any individual with respect to her compensation, terms, conditions, or privileges of employment because of such individual's race." 42 U.S.C. § 2000e–2(a). Notably, she was not required to plead a prima facie case of discrimination under *McDonnell Douglas*, which requires that a plaintiff show (1) that she was a member of a protected class, (2) an adverse employment action, (3) that she was qualified for her position, and (4) that she was "replaced by someone outside the protected class or was treated differently from similarly situated members of the unprotected class." *Warfield v. Lebanon Corr. Inst.*, 181 F.3d 723, 728–29 (6th Cir. 1999). Instead, the plausibility pleading standard of Rule 12(b)(6) applies. *See Keys*, 684 F.3d at 608–09.

Ogbonna-McGruder abandoned her discrimination claim in her briefing before the district court. In its motion to dismiss, APSU argued that the discrimination claim was time barred because she failed to file an EEOC charge within 300 days of the alleged discriminatory acts in her complaint. APSU Mot. to Dismiss, R. 56-1, PageID 523–25. In response, Ogbonna-McGruder argued that her claims were timely because the discriminatory conduct listed in her complaint supported her hostile work environment claim and did not state that she was alleging a separate discrimination claim. *See, e.g.,* Resp. in Opp. to Mot. to Dismiss, R. 59, PageID 577 ("Here, there are a number of discrete acts that have occurred over what is now a 5-year period; however, collectively . . . they are part of a hostile work environment and in fact constitute one unlawful employment practice."). Indeed, the First Amended Complaint adopted the same position when it alleged that her claims "arise from a series of separate acts that collectively constitute an unlawful employment practice." FAC, R. 53, PageID 462. Accordingly, the district court held that Ogbonna-McGruder abandoned her discrimination claim when she

exclusively relied on her hostile work environment claim to satisfy the statute of limitations requirements.

On appeal, Ogbonna-McGruder has forfeited any challenge to the district court's determination that she abandoned her claim by not addressing the issue in her opening brief. An appellant "abandons all issues not raised and argued in its initial brief on appeal." *United States v. Johnson*, 440 F.3d 832, 845–46 (6th Cir. 2006) (internal quotation marks and citation omitted). Moreover, "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation," are forfeited. *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021) (citation omitted).

Ogbonna-McGruder addressed the district court's holding that she abandoned her claim twice in her initial brief: once in her statement of the issues, and again when she "denie[d] that she ha[d] abandoned a claim of general discrimination based on race." Appellant Br. at 8, 27. However, she did not provide any explanation why the district court's decision was erroneous or cite any supporting authority. And her conclusory statements make no reference to the district court's discussion of whether her discrimination claim would comply with the relevant limitations requirements. Because she made no effort to develop her argument regarding abandonment, we hold that she forfeited the issue on appeal and affirm the district court's dismissal of her discrimination claim.

In any event, we agree with the district court that Ogbonna-McGruder failed to state a discrimination claim because she did not allege that any adverse employment action she experienced was motivated by discriminatory animus. For example, she does not explain how her supervisors' failure to complete her faculty evaluation or her reassignment to public management courses—to the extent those actions are adverse employment decisions under Title VII—were racially motivated. Ogbonna-McGruder's claim that she was replaced by a white adjunct to teach a course is similarly insufficient because she does not allege that she was replaced because of her race, or that she was otherwise similarly situated to the Caucasian professor who replaced her. *But see Keys*, 684 F.3d at 610 (finding that plaintiff stated a claim for employment discrimination where she alleged that she was treated "differently than her Caucasian management counterparts" and that she "and other African Americans received

specific adverse employment actions notwithstanding satisfactory employment performances"). Moreover, her conclusory statement that APSU treated her poorly "because of her race" is insufficient for purposes of a motion to dismiss. FAC, R. 53, PageID 462.

**D.    Retaliation Claim**

Similarly, we need not address the merits of Ogbonna-McGruder's retaliation claim because she did not properly preserve the issue on appeal. The district court held that she abandoned her retaliation claim when, in response to APSU's argument that her claim was untimely, she denied bringing such a claim and maintained that she was instead asserting a retaliatory hostile work environment claim. She identifies the district court's dismissal of her retaliation claim as an issue in her opening brief, but she provides no argument in support of her claim. Appellant Br. at 8. She also makes no mention of her retaliation claim in her reply brief. We therefore affirm the dismissal of her retaliation claim.

**E.    Individual Defendants' Motion to Dismiss**

Finally, Ogbonna-McGruder appeals the dismissal of her claims under 42 U.S.C. § 1983 against the individual defendants. Section 1983 authorizes a private cause of action against anyone who, "under color of state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). She claims that Brown and Lyle-Gonga violated § 1983 when they "engaged in conspiratorial behavior that has caused her to be deprived of rights to which she is entitled under laws of the United States." FAC, R. 53, PageID 463. Defendants argue, and the district court held, that the § 1983 claim must be dismissed because it did not allege that Brown and Lyle-Gonga's conduct violated any constitutional rights. We agree.

We have previously recognized that a plaintiff asserting a claim under Title VII is not categorically precluded from bringing a parallel constitutional claim under § 1983. *Day v. Wayne Cnty. Bd. of Auditors*, 749 F.2d 1199, 1205 (6th Cir. 1984) (holding that "an employee may sue her public employer under both Title VII and § 1983 when the § 1983 violation rests on a claim of infringement of rights guaranteed by the Constitution"); *see also Toth v. City of Toledo*, 480 F. App'x 827, 831 (6th Cir. 2012). However, when asserting both claims, the

plaintiff must allege that the conduct forming the basis of her § 1983 claim violates a constitutional right apart from the rights protected under Title VII.  *See Seigner v. Twp. Of Salem*, 654 F. App'x 223, 233 (6th Cir. 2016) (granting summary judgment to defendants on § 1983 claim where plaintiff made "only oblique references to the First Amendment, and . . . never allege[d] a constitutional violation independent of his Title VII claims"); *Day*, 749 F.2d at 1204 ("Title VII provides the exclusive remedy when the only § 1983 cause of action is based on a violation of Title VII.").

The First Amended Complaint stated that defendants violated rights secured "under laws of the United States," but did not allege that their conduct violated a specific constitutional provision.  FAC, R. 53, PageID 463.  Ogbonna-McGruder contends that she adequately notified defendants that their conduct violated her rights under the Fourteenth Amendment by including language from § 1983 in her pleading, which refers to rights secured under the "Constitution and laws."  Appellant Br. at 37.  But this broad reference to legal texts, without providing a specific provision, does not adequately put defendants on notice of her claims for purposes of a motion to dismiss.

Moreover, Ogbonna-McGruder was not entitled to further amendment of her complaint to correct the deficiency.  The magistrate judge denied Ogbonna-McGruder's motion to amend her Complaint a second time because she did not establish good cause for failing to seek earlier leave to amend under Federal Rule of Civil Procedure 16(b).  See Op. Denying Mot. to Amend Compl., R. 89, PageID 989 (explaining that a plaintiff seeking to amend a complaint after a deadline established by a scheduling order must "first show good cause under Rule 16(b) for failure earlier to seek leave to amend . . . before a court will consider whether amendment is proper under Rule 15(a)") (citing *Com. Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009)). She did not file objections to the magistrate judge's order as required under Federal Rule of Civil Procedure 72(a), forfeiting her right to raise this issue on appeal. *Berkshire v. Dahl*, 928 F.3d 520, 530–31 (6th Cir. 2019).  Although the failure to object may be excused "in the interests of justice," *Thomas v. Arn*, 494 U.S. 140, 155 (1985), we decline to do so.  Her brief just mentions the denial of her motion to amend once in her statement of issues and

in a single sentence in her conclusion, *see* Appellant Br. at 9, 39, which is insufficient to preserve her claim on appeal, *see Strickland*, 995 F.3d at 511.

## IV.

For the foregoing reasons, we AFFIRM.